THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| XING ZHAO, | CASE NO. C23-1821-JCC |
| Plaintiff, | ORDER |
| v. | |
| TRADEGO FOREX EXCHANGE, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendant PNC Bank's ("PNC") Rule 12(b)(6) motion to dismiss (Dkt. No. 35). Having thoroughly considered the briefing and the relevant record, the Court GRANTS the motion for the reasons explained herein.

I.   BACKGROUND

According to Plaintiff's *pro se* complaint,[1] Defendants David Nielson, Brandon

---

[1] Plaintiff filed his second amended complaint late and without leave to amend. (*See generally* Dkt. Nos. 25, 30, 35, 37) (PNC moved to dismiss Plaintiff's Amended Complaint on April 4, 2025, yet Plaintiff filed his Second Amended Complaint April 27, 2025—some 23 days later); *see also* Fed. R. Civ. P. 15(a)(2) (requiring a party to obtain consent from the opposing party or leave to amend if amending a complaint more than 21 days after a motion to dismiss is served). Plaintiff also filed his opposition to PNC's motion late. (*See generally* Dkt. Nos. 25, 38) (opposition filed on April 27, 2025—some 23 days after Defendant's motion to dismiss); LCR 7(d)(4) (requiring an opposition to be filed within 21 days of a motion to dismiss). Ordinarily, an amended complaint "moots a pending motion to dismiss unless the amended complaint is substantially identical to the original complaint." *Zimmerman v. Peacehealth*, 701 F. Supp. 3d 1099, 1108 (W.D. Wash. 2023). An amended complaint may still be "substantially identical to

ORDER
C23-1821-JCC
PAGE - 1

1  Newbern, and Ronald Ameral operated an investment scheme through Defendant TradeGo Forex
2  Exchange ("TradeGo"). (*See* Dkt. No. 37 at 3.) Plaintiff initially invested $25,000 with TradeGo.
3  (*Id.*) Based on the success of that investment, Plaintiff elected to invest another $100,000. (*Id.*)
4  He did so through a wire transfer directly to Mr. Newbern's PNC Bank account.[2] (*Id.*)

5        As to this later investment, Mr. Newbern represented to Plaintiff that Defendant PNC did
6  not provide Mr. Newbern immediate access to the wired funds, so Mr. Newbern directed
7  Plaintiff to verify the wire transfer with Plaintiff's bank, Bank of America ("BOA"). (*Id.* at 3–4.)
8  Plaintiff did so and BOA responded in kind. (*Id.* at 4.) Yet, according to Mr. Newbern, PNC did
9  not release the funds to Mr. Newbern and instead froze Mr. Newbern's account. (*Id.*) Plaintiff
10 later discovered this representation to be untrue. (*Id.* at 5.) The wire "was immediately made
11 available to [Mr.] Newbern" who then "moved the funds somewhere else" other than the PNC
12 account. (*Id.* at 5.) However, Plaintiff was unaware of this at the time. (*Id.*) As such, Plaintiff
13 requested that BOA cancel the wire and also asked PNC to recall the funds. (*See id.*) It did not
14 respond. Eventually, the State of Alabama banking department (where PNC was registered)
15 informed Plaintiff that PNC could not return the funds because BOA validated the wire and PNC
16 already released the funds to Mr. Newbern. (*Id.*)

17       Plaintiff then brought suit in this Court. (Dkt. No. 1.) In his Second Amended Complaint
18 (Dkt. No. 37), Plaintiff asserts a variety of claims against various defendants, including breach of
19 contract, common law fraud, violation of Section 306(2) of the Advisers Act, fraudulent

---

the original complaint even if it asserts an additional cause of action." *Id.* Plaintiff's Second Amended Complaint includes an additional cause of action, (*see* Dkt. No. 37 at 10), but his allegations are substantially similar. (*Compare* Dkt. No. 30 at 3–5, *with* Dkt. No. 37 at 3–5.) Thus, in the interests of judicial efficiency, the Court will consider the allegations made in Plaintiff's Second Amended Complaint (Dkt. No. 37), along with Plaintiff's opposition brief (Dkt. No. 38), without considering the motion to dismiss (Dkt. No. 35) as moot. Meaning, it will apply the motion to Plaintiff's Second Amended Complaint.

[2] In his complaint, Plaintiff references both PNC and BBVA banks. (*See generally* Dkt. No. 37.) As PNC points out, it acquired BBVA in 2021. (*See* Dkt. No. 35 at 1 n. 1.) As such, the Court uses PNC and BBVA synonymously.

misrepresentations, and violation of the Washington State Securities Act. (*Id.* at 7–10.) Specifically, as it relates to PNC, Plaintiff asserts claims for negligence, violation of the Electronic Fund Transfer Act of 1978 ("EFTA") and Article 4A of the Uniform Commercial Code ("UCC"), fraud, and violations of the Bank Secrecy Act and the Anti-Money Laundering Act. (*Id.* at 8–10.)

PNC moves to dismiss all claims against it. (Dkt. No. 35 at 2.) According to PNC, the claims either fail as a matter of law or are not supported by the allegations contained within Plaintiff's complaint, nor could they ever be, given PNC's allegedly attenuated role in the fraud perpetrated by other defendants in this matter. (*See generally id.*)

## II.  DISCUSSION

### A.  Motion to Dismiss – Legal Standard[3]

Dismissal is proper when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). As such, a plaintiff must provide grounds for their entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### B.  Negligence Claim

Plaintiff asserts that PNC was negligent in failing to safeguard the funds Plaintiff wired to Mr. Newbern's PNC account. (Dkt. No. 37 at 8.) In general, negligence requires a showing of (1)

---

[3] *Pro se* parties like Plaintiff are given leniency but still must meet basic procedural requirements. *Munoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022).

duty, (2) breach, (3) resulting injury, and (4) proximate causation. *Scott v. Amazon.com, Inc.*, 559 P.3d 528, 539 (Wash. 2024). According to Plaintiff, PNC knew of Mr. Newbern's fraudulent activity yet, nonetheless, accepted Plaintiff's wire(s) and provided Mr. Newbern access to those funds. (*Id.*) However, PNC argues these allegations cannot sustain a negligence claim because PNC owes Plaintiff, a non-customer, no duty. (Dkt. No. 35 at 5) (citing *Zabka v. Bank of America Corp.*, 127 P.3d 722, 722 (Wash. 2005)). The Court agrees. Again, according to the complaint, Plaintiff is not a PNC customer. (*See* Dkt. No. 37 at 4.) And it is axiomatic that, in such an instance, PNC owes no duty of care to Plaintiff. *See, e.g.*, *U.S. Bank Nat. Ass'n v. Whitney*, 81 P.3d 135, 141 (Wash. 2003) ("A bank owes no duty of care to a noncustomer with whom it has no relationship.").

Plaintiff's negligence claim against PNC fails as a matter of law.

### C. EFTA and UCC Article 4A Claims

Plaintiff also asserts that, by accepting such funds, PNC violated the Electronic Fund Transfer Act of 1978 ("EFTA") and Article 4A of the Uniform Commercial Code ("UCC"). (*Id.* at 8–9.) In moving to dismiss, PNC argues (a) the EFTA does not extend to such wire transfers and (b) Plaintiff does not assert an Article 4A violation because nothing in the complaint suggests PNC did not comply with Article 4A. (*See* Dkt. No. 35 at 4–5.) Again, the Court agrees.

The EFTA is intended to protect consumer rights in the context of electronic fund transfer systems. *See* 15 U.S.C. § 1693(b). However, Regulation E expressly excludes a "wire transfer system that is used primarily for transfers between financial institutions or between businesses." *See* 12 C.F.R. § 205.3(c)(3); *see also, e.g.*, *Rahimian v. Wells Fargo Bank N.A.*, 2024 WL 4818797, slip op. at 6–7 (C.D. Cal. 2024) (holding that the EFTA did not apply to wire transfers made between two bank accounts); *Bakhtiari v. Commercia Bank, Inc.*, 2024 WL 3405340, slip op. at 1 (N.D. Cal. 2024) (dismissing a plaintiff's EFTA claim and finding that a wire transfer between a financial institution and a beneficiary bank is an excluded wire transfer). Because this is exactly what Plaintiff is alleging happened here, (*see* Dkt. No. 37 at 3–4), he fails to state an EFTA violation.

UCC Article 4A deals with fund transfers[4] from financial institutions. *See* Wash. Rev. Code 62A.4A. Specifically at issue to the allegations here, 4A regulates transfers from a customer's bank to a third party's bank. *See* Wash. Rev. Code § 62A.4A-104 UCC Comment 1 ("Article 4A governs a method of payment in which the person making payment (the 'originator') directly transmits an instruction to a bank either to make payment to the person receiving payment (the 'beneficiary') or to instruct some other bank to make payment to the beneficiary."). But because the wire(s) here were, according to the complaint, both *authorized and accepted*,[5] PNC was not required to reverse the wires (nor is it clear how it could have once Mr. Newbern removed the funds). This was consistent with 4A's requirements, so Plaintiff fails to allege a violation. Fundamentally, Plaintiff cites no specific Article 4A section that PNC violated, (*see generally* Dkt. No. 37 at 8–9), nor can the Court discern one. As such, Plaintiff's UCC Article 4A claim cannot succeed.

Plaintiff's EFTA and UCC Article 4A claims against PNC fail as a matter of law.

**D. Fraud Claim**

Plaintiff next asserts that PNC committed fraud in how it went about verifying the propriety of his wire to Mr. Newbern before releasing funds. (*Id.* at 9.) But in moving to dismiss, PNC points to the particularity pleading requirements for a fraud claim and argues the complaint fails to meet them. (*See* Dkt. No. 35 at 6–8.) Again, the Court agrees. A plaintiff must plead nine elements[6] with particularity to support a fraud claim. *McAfee v. Select Portfolio Servicing Inc.*,

---

[4] Funds transfers are commonly known as "wire transfers." *See* Wash. Rev. Code § 62A.4A-102 UCC Comment ("Article 4A governs a specialized method of payment referred to in the Article as a funds transfer but also commonly referred to in the commercial community as a wholesale wire transfer.").

[5] According to the complaint, PNC accepted Plaintiff's wire(s) after BOA verified the wire. (*See* Dkt. No. 37 at 3–4.) PNC then released the funds to the account holder, Mr. Newbern. (*See id.* at 4–5.)

[6] Those elements are: "(1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the

370 P.3d 25 (Wash. 2011); *see also* Fed. R. Civ. P. 9(b) (requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake"). And "conclusory assertions and general complaints" will not suffice. *See Wilson v. Bank of Am., N.A.*, 2014 WL 841527, slip op at 4 (W.D. Wash. 2014). Here, Plaintiff makes a variety of allegations, including that PNC (a) failed to freeze the wire when it allegedly knew of Mr. Newbern's criminal activities, (b) released funds to Mr. Newbern even when *Mr. Newbern represented* that his funds remained frozen, and (c) "fraudulently" requested wire verification from BOA. (Dkt. No. 37 at 9.) But these are either wholly conclusory, fall well short of the detailed allegations required to plead fraud, or simply do not support a fraud claim. Fundamentally, Plaintiff fails to explain *what* was fraudulent about PNC requesting a wire verification and then releasing funds once it received that verification. (*See generally id.*)

Plaintiff fails to state a fraud claim against PNC.[7]

### E. Bank Secrecy Act and Anti-Money Laundering Claim

Finally, Plaintiff asserts a claim against PNC for violations of the Bank Secrecy Act ("BSA") and Anti-Money Laundering provisions[8] (for failing to report suspected criminal activity). (*See* Dkt. No. 37 at 10.) But as PNC points out, neither the BSA nor its anti-money laundering regulations authorize a private right of action. (*See* Dkt. No. 40 at 4.)[9] The Court

---

representation is address, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage." *Elon Constr., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012) (internal citations omitted).

[7] The complaint also includes a claim for fraudulent misrepresentation against a generic "defendant," without specifying which defendant is subject to the claim. (*See* Dkt. No. 37 at 6–7.) To the extent Plaintiff desires to state a fraudulent misrepresentation claim *against PNC*, he fails to allege in what way he relied on the information PNC provided. (*See generally id.* at 7, 9.) Therefore, he fails to plead a fraudulent misrepresentation claim against PNC.

[8] It is unclear from Plaintiff's complaint whether he is asserting violations of the 2020 Anti-Money Laundering Act or violations of the anti-money laundering regulations within the BSA. Regardless, as described below, neither authorize a private right of action.

[9] Congress enacted the BSA to, among other purposes, prevent money laundering and to "facilitate the tracking of money that has been sourced through criminal activity or is intended to

agrees. As a private individual, Plaintiff cannot bring a claim enforcing such provisions. Thus, this claim against PNC also fails as a matter of law.

### F. Other Claims

Plaintiff also asserts claims against unspecified defendant(s) for breach of contract, violations of Section 206(2) of the Advisers Act, and violations of the Washington State Securities Act. (*See* Dkt. No. 37 at 5–7.) It is not clear whether Plaintiff intends to assert such claims against PNC. Nevertheless, because PNC affirmatively moves to dismiss them, the Court will address briefly address each, as they relate to PNC. **First**, to establish a claim for breach of contract, there must be a contract between the parties. *See Storti v. University of Washington*, 330 P.3d 159, 163 (Wash. 2014). Yet Plaintiff does not allege that he entered into a contract with PNC. (*See* Dkt. No. 37 at 5.) Thus, this claim is not adequately pleaded. **Second**, Section 206(2) of the Advisers Act only pertains to investment advisers. *See* 15 U.S.C. § 82b-6. This explicitly excludes banks. *Id.* at § 80b-2(11). And Because PNC is a bank, (*see* Dkt. No. 37 at 2), Plaintiff cannot plead a colorable Section 206(2) claim against it. **Third**, as to violations of Washington's Security Act, RCW 21.20.040 and RCW 21.20.010, Plaintiff makes no specific allegations as to PNC, *i.e.*, that *it* offered or sold Plaintiff securities. (*See generally id.* at 3–5.) Thus, it could not have violated the Act. Therefore, to the extent Plaintiff attempts to assert these claims against PNC, they fail as a matter of law and/or are inadequately pleaded.

### III. CONCLUSION

For the foregoing reasons, PNC's motion to dismiss is GRANTED. All claims against it are DISMISSED with prejudice and without leave to amend, as further amendment would be

---

promote criminal or terrorist activity." 31 USC § 5311(2)–(3). The BSA contains regulations that require financial institutions to establish anti-money laundering programs. *See id.* at § 5318(h). Entities that violate the BSA are liable to the United States Government. *Id.* at § 5321. And courts have commonly held that the BSA does not provide a private right of action. *See Venture General Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, slip op. at 7 (N.D. Cal. 2019) (surveying courts that have held there is no private right of action to sue under the BSA).

futile.[10] *See Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018).

DATED this 29th day of May 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[10] *See supra* n.1.

ORDER
C23-1821-JCC
PAGE - 8